# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**AFFORDABLE CARE, LLC**                                                          **PLAINTIFF**

**v.**                                                          **Civil No. 1:19cv827-HSO-RPM**

**JNM OFFICE PROPERTY, LLC**                                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JNM OFFICE PROPERTY, LLC'S RENEWED MOTION [236][238][240] FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR REMITTITUR, MOTION FOR NEW TRIAL, AND MOTION TO ALTER OR AMEND JUDGMENT

BEFORE THE COURT is Defendant JNM Office Property's Renewed Motion [236][238][240] for Judgment as a Matter of Law, Motion for Remittitur, Motion for New Trial, and Motion to Alter or Amend Judgment. These Motions are fully briefed. Having considered Defendant's Motions [236][238][240] on their merits, the related pleadings, the record, and relevant legal authority, the Court is of the opinion that the Motions [236][238][240] should be granted in part and denied in part.

## I.  BACKGROUND

A.  Factual background

This dispute arises out of a Lease Agreement between Plaintiff Affordable Care, LLC ("Affordable" or "Plaintiff") and Defendant JNM Office Property,

LLC ("JNM" or "Defendant") that was entered into on July 24, 2013, for the lease of an office building in Gulfport, Mississippi (the "Property"). Compl. [1] at 2; Ex. [1-2] at 1-16. JNM is owned by two dentists, Dr. Raeline McIntyre and Dr. Neil McIntyre. Resp. [5] at 1. The McIntyres operated their dental practice out of the Property and had also entered into a separate Management Services Agreement ("the MSA") with Affordable, under which Affordable provided professional dental equipment, supplies, staff, and services for the McIntyres to operate their dental practice. Ex. [34-1]. The MSA was an entirely separate agreement from the Lease Agreement and was the subject of a separate arbitration proceeding. Order [215] at 3.

On October 24, 2019, JNM forwarded a Notice of Termination of the Lease, contending that Affordable had defaulted on the Lease Agreement. *See* Compl. [4] at 4. JNM purportedly invoked its right to terminate the Lease immediately, retake possession of the Property, and accelerate all remaining rent payments in the amount of $1,531,135.57. *See id.* On February 27, 2020, JNM also obtained a temporary restraining order ("TRO") from the Chancery Court of Harrison County, Mississippi, to prevent Affordable's employees from entering the Property to take possession of certain equipment, materials, supplies, and inventory located there. Ex. [34-3] at 10-11.

Affordable's claims in this case included that JNM wrongfully restricted its employees' access to the Property despite Affordable having paid rent, in violation of the Lease Agreement, and despite it having its own dentistry equipment and supplies inside the Property. Am. Compl. [160] at 10. Furthermore, Affordable

alleges that the McIntyres continued to use Affordable's equipment and occupied the building to the exclusion of other dentists, preventing Affordable from collecting management fees from other dentists it could have placed in the Property, from February 27, 2020, until March 27, 2020. *Id.* at 11. The operative Amended Complaint [160] alleged that: (1) JNM wrongly declared default under the Lease Agreement; (2) that Affordable was entitled to reimbursement for over-payments of rent and other items; and (3) that JNM wrongfully evicted Affordable, causing damages. *Id.* at 5-6. Affordable further asserted claims for bad faith breach of contract, conversion, property damage, and unjust enrichment. *Id.* at 14. In response, JNM counterclaimed for breach of the Lease Agreement and breach of the covenant of good faith and fair dealing. Ans. [161] at 11-15.

B.   Procedural history

After suit was filed, on December 6, 2019, the parties entered into a Joint Stipulation [13] to maintain the status quo, whereby Affordable would remain in possession of the Property and continue to make monthly rent payments to JNM. Stip. [13] at 2-3. Subsequently, however, Defendants evicted Affordable from the property from February 27, 2020 until March 27, 2020, when the Court ordered Defendants to restore Affordable's access. Order [56].

Both parties submitted Motions [181][183] for Partial Summary Judgment, which the Court granted in part and denied in part following a hearing held on March 1, 2021. Order [200]. The Court found that Affordable had not defaulted on the Lease and that the Lease remained in effect. *Id.* The Court also dismissed

JNM's counterclaims against Affordable, finding that Affordable did not materially breach the Lease Agreement and did not breach the implied covenant of good faith and fair dealing. *Id.* The issues remaining for trial were Affordable's claims for wrongful eviction, bad faith breach of contract, conversion, property damage, and unjust enrichment. *Id.*

Prior to trial, Affordable filed a Motion [206] *in Limine* to exclude, among other things, references to the TRO, arguments that JNM actually owned the office equipment, and any reference to other lawsuits, arbitrations, or counterclaims between the parties. Mot. [206]. JNM filed its own Motion [215] *in Limine* seeking to exclude references to the Joint Stipulation [13]. The Court granted in part and denied in part both Motions. Specifically, it excluded references to the Joint Stipulation, the TRO, and other lawsuits, arbitrations, or counterclaims. The Court ruled that arguments of ownership were relevant to the issue of damages, and therefore would be permissible at trial.

C.  Trial and post-trial proceedings

The remaining claims were tried before a jury on February 7-8, 2022. J. [230]. At the conclusion of Affordable's case-in-chief, JNM made an ore tenus Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a). The Court granted the Motion in part and denied it in part, and dismissed Affordable's claims for property damage, unjust enrichment, and conversion. The Motion was denied with respect to the remaining claim for breach of contract based upon the wrongful eviction.

The jury returned a verdict in Affordable's favor and awarded $80,791.00 in compensatory damages, consisting of the amount of rent Affordable had paid for the month it was excluded from the Property by JNM, and an amount of lost management fees for that period. The jury also awarded $120,000.00 in punitive damages, for a total judgment of $200,791.00. The Court entered Judgment on February 9, 2022. J. [230]

Defendant has filed the present Renewed Motion [236] for Judgment as a Matter of Law, Motion for Remittitur, Motion for New Trial, and Motion to Alter or Amend Judgment,[1] arguing that it is entitled to relief because the evidence offered to support the compensatory and punitive damages awards was legally insufficient. Mem. [237] at 12. Alternatively, JNM maintains that it is entitled to a new trial on the issue of punitive damages because the award was contrary to the great weight of the evidence, there were prejudicial evidentiary rulings, or alternatively, the damages must be reduced as a matter of law. *Id.* at 18-22. Affordable opposes the Motion. Resp. [245].

## II. DISCUSSION

A. <u>Applicable legal standards</u>

Federal Rule of Civil Procedure 50(b) permits a party, within 28 days after the entry of judgment, to file a renewed motion for judgment as a matter of law.

---

[1] Defendant filed multiple copies of identical briefs entitled "Renewed Motion for Judgment as a Matter of Law, Motion for Remittitur, Motion for New Trial, and Motion to Alter or Amend Judgment," and docketed them as a Motion [236] for Remittitur and New Trial, Motion [238] to Alter Judgment, and Motion [240] for Judgment as a Matter of Law. For simplicity, the Court will refer to the first docketed Motion [236] and Memorandum in Support [237].

Fed. R. Civ. P. 50(b). Judgment as a matter of law is appropriate only when the "facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (internal quotation marks omitted) (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012)). The Court must draw "all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [it] might regard as more reasonable." *Id.* It is the non-moving party's burden to "at least establish a conflict in substantial evidence on each essential element of their claim." *North Cypress Med. Ctr Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th Cir. 2011)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

    A court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A); *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 417 (5th Cir. 2020). The Fifth Circuit has identified several grounds as sufficient to order a new trial, including "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*,

6

773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). A jury award is excessive "only if it is greater than the maximum amount the trier of fact could properly have awarded." *Moore v. M/V ANGELA*, 353 F.3d 376, 384 (5th Cir. 2003) (citation omitted).

"When a damage award is merely excessive or so large as to appear contrary to right reason, remittitur is the appropriate remedy." *Consol. Cos. v. Lexington Ins. Co.*, 616 F.3d 422, 435 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003)). If the Court deems the jury award "excessive," then it "may remit the award rather than order a new trial, so long as the award does not result from 'passion or prejudice' on the part of the jury." *Id.* (citing *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 981 (5th Cir. 1996)).

B.   JNM's challenge to the compensatory damage award

1.   Applicable legal standards

"Compensatory damages are such damages 'as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury.'" *Parsons v. Walters*, 297 So. 3d 250, 259 (Miss. 2020) (quoting *Richardson v. Canton Farm Equip., Inc.*, 608 So. 2d 1240, 1250 (Miss. 1992)). In order to recover damages for lost profits based on breach of contract, the claim must be established with reasonable certainty. *Ishee v. Peoples Bank*, 737 So. 2d 1011, 1013 (Miss. Ct. App. 1998) (citing *Polk v. Sexton*, 613 So. 2d 841, 844 (Miss. 1993)).

7

2. <u>The parties' arguments</u>

JNM argues that it is entitled to judgment as a matter of law and remittitur, or in the alternative, a new trial, on compensatory damages for lost management fees because this element of damages was not established with reasonable certainty sufficient for a jury to award them. Mem. [237] at 7-8. It claims that Affordable did not offer sufficient evidence that it could have contracted with another dentist to work at the Property to generate management fees during the one-month time period it was excluded from the premises. *Id.* at 9. JNM asserts the jury based its award on what Affordable would have earned if the McIntyres had not disaffiliated with Affordable, but the MSA and the McIntyres' decision to terminate it were not issues for the jury to decide in this case and therefore they could not serve as the basis for a compensatory damages award. *Id.* at 10-11.

Affordable responds that it presented sufficient evidence of its lost profits, including lost management fees, incurred during the month JNM disturbed its peaceful possession of the building. Resp. [246] at 8. It points to evidence in the form of the testimony of Affordable's Senior Vice President of Field Operations, Karol Twilla ("Twilla"), that the management fees Affordable could have earned from a new dentist would have been comparable to the management fees collected from the McIntyres. *Id.* Affordable contends that remittitur is also not appropriate because lost profits were sufficiently argued and proven at trial based upon Twilla's testimony. *Id.* at 11.

3.   Analysis

The Mississippi Supreme Court has held that where a plaintiff has suffered monetary damage and has produced the best evidence available to him, he should not be denied recovery simply because the amount of damages cannot be ascertained with the same precision as an ordinary claim for damages. *Thomas v. Global Boat Builders & Repairmen, Inc.*, 482 So. 2d 1112, 1117 (Miss. 1986).

Courts have previously held that lost profits damages are not purely speculative when one party breaches a contract for services. *See Benchmark Health Care Ctr., Inc. v. Cain*, 912 So. 2d 175, 178 (Miss. Ct. App. 2005). In that case, the defendant Cain, doing business as Quest Rehab, provided rehabilitation services inside a health care center owned by the plaintiff, Benchmark Health Care. *Id.* at 177. Quest was required to submit an invoice each month for the services it rendered, and Benchmark was responsible for paying the invoice within thirty days. *Id.* Benchmark fell behind in payments to Quest, and eventually gave a 45-day warning that it was cancelling their contract. *Id.* at 178. Before the 45 days had expired, Benchmark asked Quest to cease providing services immediately. *Id.* The jury awarded damages in the amount of Benchmark's missed payments and Quest's lost profits, minus profits from Quest's new contract with a different nursing home that covered parts of the original contract dates. *Id.* at 181.

The Mississippi Court of Appeals concluded that because the plaintiffs in *Benchmark* found another business to fill the defendant's contract, the jury "would have been well within its discretion to reduce" the claim for lost profits by the

amount estimated to have been earned on the new contract. *Id.* at 181. Here, Affordable looked at the number days where JNM was in breach of the Lease Agreement and presented evidence to the jury by way of Twilla's testimony regarding how much profit it believed it could have expected to receive during this period of breach. Tr. [243] at 121. Although JNM argues that Affordable did not prove that it would have been able to find a replacement dentist, the actual harm was caused by JNM's breach of the lease, regardless of Affordable's ability to mitigate. Moreover, because JNM maintained possession of the property, this constrained Affordable's ability to actually mitigate its damages.

Courts have repeatedly held that lost profits are appropriate when a defendant's actions interfere with a plaintiff's ability to do business. *Lynn v. Soterra Inc.*, 802 So. 2d 162, 170-71 (Miss. Ct. App. 2001) (lost profits were appropriate when the defendant asserted exclusive ownership of a road and the plaintiff was unable to use the road to access his property from which he conducts his business). "Where it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision awarding damages." *Cain v. Mid–South Pump Co.*, 458 So. 2d 1048, 1050 (Miss. 1984). When loss is realized, but "the extent of the injury and the amount of damage are not capable of exact and accurate proof," damages may be awarded if the evidence lays "a foundation which will enable the trier of fact to make a fair and reasonable estimate of the amount of damage." *Id.* at 1050.

JNM cites *Southeastern Medical Supply, Inc. v. Boyles, Moak & Brickell Insurance, Inc.,* 822 So. 2d 323, 328 (Miss. Ct. App. 2002), for the proposition that there is no proximate cause linking Affordable's harm with JNM's breach of the lease, because Affordable's harm was caused by its failure to have a new dentist on the Property to replace the McIntyres, not by JNM's breach of the lease. Mem. [237] at 10. However, that case is not factually similar enough to the present one to be persuasive. The plaintiff in *Southeastern* argued that had the defendant timely supplied a contracted-for insurance policy, this would have resulted in a more favorable resolution of litigation in which the plaintiff was engaged. *Southeastern,* 822 So. 2d at 328. The court rejected this argument, because "not only does the evidence submitted fail to create a proximate cause linking any action or inaction taken by [the defendant] to the lost profits suffered by [the plaintiff], but this evidence is also too speculative to support any claim for lost profits." *Id.* JNM argues here that it is too speculative to assume that Affordable could have found another dentist to place on the Property; however, as Affordable has noted, JNM's improper occupancy of the Property significantly interfered with any possibility of Affordable installing a new dentist, Mem. [246] at 10, and the issues of causation and damages are not purely speculative, Tr. [244] at 69-70. Because JNM improperly remained in possession of the property to the exclusion of Affordable, *Southeastern* is inapposite. JNM's actions interfered with Affordable's ability to install an affiliated dentist, such that compensatory damages were appropriate. *See Lynn*, 802 So. 2d at 170-71.

11

Because Affordable presented sufficient evidence for a reasonable jury to award lost profits for the management fees, Defendant's Motion [236] should be denied in this regard.

C.   Punitive damages

1.   The parties' arguments

JNM argues that Affordable did not establish by clear and convincing evidence that it acted with actual malice, gross negligence, or committed actual fraud to entitle Affordable to an award of punitive damages. Mem. [237] at 12. It further contends that prejudicial error occurred when the Court excluded evidence of the TRO the McIntyres obtained from the Chancery Court, because the TRO "was relevant and admissible to show the McIntyres' good faith intentions, and thus JNM's lack of malice, with respect to the possession of the property." *Id.* at 18-19. Because Dr. Raeline McIntyre was prohibited from testifying about the TRO, "Affordable Care was free to argue to the jury that JNM simply chose to exclude Affordable Care from the premises in the face of a valid lease agreement." *Id.* at 19. Alternatively, JNM contends that the jury's punitive damage award should be lowered to $27.518.60, because Mississippi law limits punitive damages awards in proportion to the net worth of a defendant. *Id.* at 20-21.

Affordable counters that punitive damages were appropriate because it presented testimony that JNM's breach of the lease rose to the level of an independent tort. Resp. [246] at 12. It asserts that Dr. Raeline McIntyre admitted on cross-examination at trial that "forethought and planning" went into the decision

12

to evict Affordable, which satisfies the requirements for an independent tort by establishing that JNM acted intentionally and knowingly. *Id.* at 14. Additionally, exclusion of the TRO was proper because "[t]he TRO in no way related to the Lease; nor did the TRO allow JNM, or the McIntyres, to disturb Affordable's possession of the premises." *Id.* at 15. Furthermore, Affordable asserts that the punitive damages award should not be reduced, because the JNM has only provided "a self-serving and unsupported calculation of its net worth," which is insufficient for purposes of applying the damages cap. *Id.* at 16.

2. <u>Applicable legal standards</u>

Mississippi law limits the award of punitive damages to specific circumstances. *See* Miss. Code Ann. § 11-1-65(1)(a); *Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 79 (Miss. 2003) ("There is no right to punitive damages."). Miss. Code Ann. § 11-1-65(1)(a) provides that:

> [p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

*Id.* The Court may only submit the issue of punitive damages to a trier of fact when it finds, based upon the totality of the circumstances, that the trier of fact could find by clear and convincing evidence that a defendant's conduct reflected either malice or gross neglect/reckless disregard. *Doe*, 835 So. 3d at 81. Where a jury properly awards punitive damages, "no award of punitive damages shall exceed . . . [t]wo

percent (2%) of the defendant's net worth for a defendant with a net worth of Fifty Million Dollars ($50,000,000.00) or less." Miss. Code Ann. § 11-1-65(3)(a).

3.   Analysis

With respect to exclusion of the TRO, as the Court stated in its Order [214] on the Motion in Limine,

> Affordable's wrongful eviction claim arises out of the Lease Agreement, not the violation of the Joint Stipulation, and nothing in the TRO authorized JNM or the McIntyres to restrict Affordable's access to the premises. Instead, the TRO related to efforts by Dr. Raeline McIntyre to maintain some semblance of the status quo under the Management Services Agreement ("MSA"), an entirely separate agreement that was the subject of a separate arbitration proceeding, and is not at issue in this case. For these reasons, evidence of the TRO is not relevant to the issues the jury must resolve in this case, and such evidence is therefore inadmissible.

Order [214] at 3. Evidence of the TRO could not have shown "good faith intentions, and thus JNM's lack of malice" as JNM argues, Mem. [237] at 18, because the TRO by its plain terms said nothing about the Lease Agreement and did not permit JNM to prohibit Affordable's physical access to the premises, Order [214] at 2. The TRO only authorized JNM to maintain the status quo as it pertained to provision of dental services under the MSA, which was not before the jury for consideration. *Id.* at 3. Therefore, exclusion of this evidence was not in error.

As for the merits of Affordable's entitlement to punitive damages, the evidence was sufficient for a reasonable jury to conclude by clear and convincing evidence that JNM acted with actual malice. *See Cascio v. Cascio Invs., LLC*, 327 So. 3d 59, 76 (Miss. 2021) (citing Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2019)) ("Punitive damages may not be awarded if the claimant does not prove by clear and

14

convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."). As one of JNM's principals, Dr. Raeline McIntyre's trial testimony on cross-examination demonstrated an intention to breach the Lease Agreement, and thus was sufficient for a jury to find that JNM's conduct rose to the level of an independent tort. Dr. Raeline McIntyre testified under oath that she planned to evict Affordable from the Property the night before she barred entry to Affordable's employees, despite knowing that Affordable had a right to occupy the building. Mem. [246] at 12-14 (citing Tr. Trans., Vol. 1, 71-73). Evidence of planning the eviction with knowledge that it would be in violation of JNM's Lease with Affordable was sufficient evidence for the jury to conclude that JNM acted intentionally and with malice. *See Eselin-Bullock & Assocs. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co.,* 604 So. 2d 236, 241 (Miss. 1992) (finding that the defendant's act of cancelling insurance policies with knowledge that cancellation violated its contract with the plaintiff was "an intentional wrong" and that it was a jury question whether or not the violation rose "to the level necessary to constitute an independent tort which would justify punitive damages.").

Turning to JNM's argument that the Court should reduce the punitive damages award, Affordable does not challenge the applicability of the cap, only whether JNM has produced sufficient evidence of net worth to support its application. *See generally* Mem. [246] at 16-18; *see also KLLM Transp. Servs., LLC*

15

*v. JBS Carriers, Inc.*, No. 3:12-CV-116-HTW-LRA, 2017 WL 6614813, at *4 (S.D. Miss. Dec. 22, 2017) (allowing defendant to present evidence of net worth at the post-trial, pre-appeal stage, stating that "the punitive phase does not end with the jury's award, but with the trial court's determination that the jury's award is reasonable and in compliance with Mississippi law. "). Therefore, the Court will consider the issue of JNM's net worth and whether it operates to reduce the punitive damages award.

Mississippi Code 11-1-65(3)(a) directs the reduction of a plaintiff's punitive damages award based on the net worth of the defendant, and allows an award of no more than two percent of the defendant's net worth if a defendant has a net worth of fifty million dollars or less. Miss. Code Ann. 11-1-65(3)(a). Net worth is calculated in accordance with Generally Accepted Accounting Principles ("GAAP"). Miss. Code Ann. 11-1-65(3)(b).

JNM's evidence of net worth submitted with its original brief included a brief affidavit from its accountant and a short balance sheet. *See* Ex. [236-1] at 1-2. Subsequent evidence provided by JNM with its rebuttal included a more detailed balance sheet, bank records, and another, more detailed, affidavit from JNM's accountant. *See* Ex. [253-1]. JNM also submitted an asset depreciation report, which indicated that all of JNMs assets were included in the report. *Id.* at 5. This evidence establishes that the value of JNM's property and equipment is $2,503,914.00, and that its bank account contains $19,215.82 in cash. Ex. [236-1] at 2. JNM's accountant estimates asset depreciation at $594,318.98. *Id.* Furthermore,

16

JNM owes $552,881.06 on a loan from its bank. *Id.* Based upon this evidence, JNM's net worth is calculated at $1,375,929.78, below fifty million dollars, which would trigger the statute's two percent cap on punitive damages. *See KLLM Transp. Servs., LLC*, 2017 WL 6614813 at *2 (citing Miss. Code Ann. § 11-1-65(3)(a)); *Soffra v. Shieldsboro Dev.*, Inc., 314 So. 3d 129, 144 (Miss. Ct. App. 2020), *reh'g denied* (Mar. 30, 2021).

Affordable has not presented any evidence to contradict the figures submitted by JNM. While it argues that JNM's income from its rental property and the value of the property's furnishings should count towards the calculation of net worth, Mem. [246] at 17, JNM's accountant testifies in his affidavit that projected rental income is not properly included in calculations of net worth under GAAP, Ex. [253-1] at 2 (citing Financial Statement Accounting Standards Board Accounting Standard Codification ("ASC") 840-20-25). Affordable generally contends that the balance sheet does not conform with GAAP, Mem. [246] at 18, but it has not put forth specific arguments invoking particular accounting principles to support this position, *see generally id.* "Although it is not necessary to submit financial information as a prerequisite to obtaining punitive damages," *Ciba-Geigy Corp. v. Murphree,* 653 So. 2d 857, 862 (Miss. 1994), Affordable has not offered any evidence or persuasive argument that conforms with GAAP to challenge JNM's evidence of net worth, *see generally* Mem. [246] at 18. Therefore, the credible evidence supports the conclusion that JNM's net worth is $1,375,929.78. Applying the pertinent statutory cap to the punitive damages award in this case, two percent of JNM's net

worth comes to $27,518.60. The punitive damages award should be reduced accordingly.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant JNM Office Property's Renewed Motion [236][238][240] for Judgment as a Matter of Law, Motion for Remittitur, Motion for New Trial, and Motion to Alter or Amend Judgment are **GRANTED IN PART AND DENIED IN PART.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant JNM Office Property's punitive damages award is reduced to $27,518.60, and Affordable shall recover of and from JNM a total judgment in the amount of $108,309.60, which represents $27,518.60 in punitive damages and $80,791.00 in compensatory damages. The Court will enter an amended final judgment.

**SO ORDERED AND ADJUDGED,** this the 10th day of August, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE